Good morning, Your Honors. On behalf of Devak Lama, Guree Serene, I would like to keep a minimum of two minutes, Your Honors, for a rebuttal. This case, the immigration judge found that my client had met the heavy burden for past persecution and granted asylum on past persecution, but then stated, without any foundation or any facts or any proof, that there had been a fundamental change in... I'm sorry. Mr. Serene, we lost you for a second, so keep going. I'm sorry. Somebody just said it was being recorded. I apologize. Basically, the high burden that the government had to show and the judge had to show was there was fundamental change in Nepal or in the individual facts facing Mr. Lama, and they had, in fact, no facts and, in fact, no evidence. So it's unfortunately an irrational, arbitrary decision without any proof. All the evidence and proof is on behalf of Mr. Lama and showing still today that he can't return. His land hasn't been returned. His family is being persecuted, and he did everything in this case to prosecute this case, and he was stopped at every process even when they tried to close this case. Are there any other questions? Aaron, the BIA said that he could safely return to Chitwan where he had lived for five years. Why was that incorrect? That's a very good question, Your Honor. First of all, it's a bit confusing for me that how would the judge find past persecution when he alleges a person went to live in Chitwan in 2003 to 2008 and then alleged he had past persecution living in Nepal till 2013. But let's say there's no issue over there that there was no mistake. He didn't have any evidence. There's proof in the record, Your Honor. I would like to bring the court's attention to transcript page 000392, which was the judge's selective use and ignoring evidence. It's a letter from his uncle. The letter from his uncle dated 2016, April 27th, specifically stating they will kill you if you come back to Chitwan. They're looking for you. They'll break your legs. The only people staying here are the Maoris. All other youths have run away, ignored, forgotten, selectively discarded.  You cannot choose. You have to look at the totality. And we provided this letter, and it was never, ever acted upon. Nobody has even read it. Thank you. If there are no other questions, then I'd like to keep my time for rebuttal, Your Honor. I do have one question, and please have your phone turned off, the ringer turned off, while you're doing the argument. Yes, sir. What relief do you seek from us? Your Honor, thank you very much. The relief is that basically he's met his burden for asylum. He's shown past persecution. He's shown a well-founded fear of persecution. He should be granted asylum based on his religion and political opinion. We can't grant asylum. That's why I was asking. Well, you can grant back and state that the evidence compels a finding. There's been no fundamental change to the past persecution, and there's been no changes to his individual facts. The BIA and the immigration judge clearly are in error. There is no evidence to support their change by the preponderance of the evidence of a fundamental change in circumstances. The question I was going to ask you is this. The IJ denied relief on some other grounds. The BIA didn't reach them because it relied on the relocation finding. Don't we have to send it back to the BIA to consider that? And if we send it back, wouldn't we send it back on an open record so they might be able to demonstrate why Chitwan or some other place in Nepal was a safe place he could relocate? I was concerned with the end of your brief where you basically said we should grant asylum or grant cat relief, and I'm not sure we can do that under the facts of this case. I'm saying basically there's no evidence to show, Your Honor, that the government met or the judge's decision is based on any facts to show a fundamental change in Nepal. And the BIA decision does not mention the harm to his family, the property of his being taken, or to his uncle's letter in Chitwan stating they will kill you and break your legs. There is no evidence to support a finding of any changed circumstances. That's all I'm saying. It's an erroneous decision. Thank you. Thank you. Save the rest of your time for rebuttal. Please put your phone on mute right now so we can help us with the audio. Will do, sir. Let's hear from the governor. May it please the court, Jennifer Corey on behalf of the Attorney General. I just want to say up front that I don't think that the immigration judge's fundamental change in circumstances determination is before the court because the board specifically did not rely on it. So all we're looking at here with regard to his asylum claim is whether DHS adequately rebutted the presumption of a well-founded fear of persecution. I'd ask you to focus on that because I'm not sure looking at this record what evidence there was to support the eventual conclusion that this individual could relocate to that specific location other than the fact that he once lived there. What else is there that supports that? It seems to me the evidence is that Maoists are throughout Nepal. His uncle says there's danger there if he comes back. So what's viewed in the light most favorable to the government, what's the evidence that shows he could safely relocate to this location? I just initially just want to say that the uncle's letter I don't think was ever brought up as being ignored as an argument. I'm not saying it was ignored. It's in the record. It's in the record. It is absolutely in the record. I just had not. It had not been brought up before. That's fine. That's fine. Looking at the whole record, tell me what your best case is that this individual could safely relocate in, and I'll mispronounce the name, but I think it's Chitwan. That is how I pronounce it as well. I mean, I think the best case is the dominant fact that he did live there from 2003 to 2008. That's five years without incident. But it's also five years. It's five years many years ago. So how dispositive or even relevant can that be at this point? Well, his whole claim spans from 2003 to 2013, I believe. And during that time, he had incidents that happened before he moved to Chitwan, and there are incidents that happened after he moved, after he came back from Chitwan. But there's this five-year gap where nothing happened. Now, what happened to him before he went is essentially the same stuff that happened to him after he went, leading to the reasonable conclusion that the locale was determinative, right? So he was harmed and threatened in his original home village, which I won't even try to pronounce, and then Kathmandu. He mentioned that... Other than the fact that he previously lived there for those five years, do you have anything else? Does the government have anything else to show that the conditions in Chitwan are such that he could safely return? I don't believe there's anything else in the record, honestly. But I believe that's all that's needed. I mean, this court has held before that lengthy internal relocation without incidents supports the government's claim that future relocation would be reasonable. And five years is a long time. What precedent are you referring to there? Gomez v. Gonzalez. I understand it supports it, but is it sufficient? See, it's one thing to have a country conditions report that says there are no Maoists in this part of the country or they're safe or they're not persecuting people politically in this part of the country. And then also have somebody who's lived there previously without incident. But here, I think you're saying all you have to suggest that he could safely relocate was the fact that he lived there from 2003 to 2008 without incident. Is that fair? Yes, that's fair. The agency didn't didn't rely on country conditions evidence either. So I guess I'm asking Judge Bress's question with a more specific focus. Is there any case in which prior location alone has been found by us to support the to support the notion that the agency's met its that DHS has met its burden to show that someone could safely relocate? I can point to an unpublished case. I cannot point to a published case. And I don't know that you want to hear about it. Well, you can tell us. Tell give us a side of the unpublished case. So it can be persuasive. They're not. It's not like they're it's not like they're taboo. We just don't have to follow. Right, right. I had an argument last week where I was told not to talk about them. So I just wanted to ask before. We're a lot nicer. The citation is it's thinking Casey and it's 305 APPX four five five. And it's a 2008 case. Okay, let me ask you, Miss Curry. Now that we now that we all see this letter that petitioners counsel referenced that AR three ninety two from the uncle. I guess I'd like to hear your response because there now appears to be evidence in the record that would suggest that returning to chip one could be problematic for the petitioner. And my response is, is that should this court decide that that is evidence that the agency should have considered that it needs to be remanded. But I will say that it was never brought up before the agency. And so that is a claim that if the agency incorrectly ignored that evidence, that is something that should have been exhausted before the board when he was before the board. Well, I don't know. I'm not sure I understand that argument. So help me. You have a hearing before the before the IJ. And I take it this letter was introduced. Yes, it was absolutely OK. And it was in the record when it went up to the board. The IJ said, I've considered all the evidence and you can safely relocate. He didn't expressly discuss this letter. Right. Correct. And I think that the board's an appellate body and looks at the record and says, we think the IJ was right after all the evidence he considered. Now, what what more what more does the petitioner have to do to to raise the claim to us that there's contrary evidence in the record that neither the board nor the IJ discussed? Well, I I believe just as he did today to say that, like, it's an error if the immigration judge didn't consider evidence to the contrary. Right. Of the reasonable relocation. And so on appeal to the board, he would say the error in this in this decision is that he only considered affirmative evidence that I can relocate. And he missed this piece of evidence that would bring notice to the board to look at this piece of evidence. The board is an appellate body that is looking at the arguments that you make in front of them and specifically addressing those arguments. And I don't believe the board was on notice to look at this specific piece of evidence in a thousand page record. Well, let's imagine that. Let's let's just assume for a second that the board was on notice of the letter. I know you disagree with that. Let's just assume that. If the board was on notice of this letter, but it nonetheless reached the same conclusion that it reached that we're looking at, would the board have clearly heard in that situation? I. I actually haven't fully read the letter, I have to say. But given what Mr. Seren said about it, I think it would count. It is a pretty dominant fact that that Mr. Mama was able to live it for five years in a place without harm or threat of harm. I would say this would this would cut against that. But I would still say it's a preponderance of the evidence standard. And that standard still may have been met. Well, you see, but my problem is I'm not. It's clear the board didn't consider that letter. The board's decision says the record contains no evidence that it would no longer be safe or reasonable for the respondent to once again return to the town where he had previously voluntary relocated, resided for approximately five years without incident. We've all read this letter. It's in the record. There is evidence now. You know, so at the very least, shouldn't we send it back to them? Because after looking at the record, they missed this piece of evidence. I will say that if you. Yes. Yes, your honor. If you believe that this evidence should it was I'm going to stick by my exhaustion. I understand your position. Yes, I understand your position that he should have argued it. But here we have an affirmative statement by the board that the record contains no evidence. And if if we read the letter the same way, if I read the letter the same way, Judge Bress suggests the record does contain evidence. So we have a factual misstatement in the board's opinion. I'm not sure how important the evidence is. I'm not sure whether or not it would outweigh the other evidence. But that's not our job. That's the board's job, isn't it? Yes, your honor. And I have to say that if that's the way the court is going, I'll just have to say this because opposing counsel is is arguing for asylum grant outright. And the proper procedure would be send it back to send it back. Yes. Thank you. Thank you. I appreciate your your your sticking with the questions on this one. Mr. Saron, you have some time for rebuttal. Thank you. Just three minor issues. Number one, counsel is courting Gomez. I was the attorney on Gomez to 2005 case that the individuals did relocate before they fled Bangladesh. This individual did not flee Bangladesh. I mean, Nepal in 2008, fled in 2013. So it's not appropriate. The other issue isn't whether he can relocate anywhere in Nepal. It is whether he can carry on with his political activities and his religion. That's the key. And that's what came out. And I provided the Court of Appeals. Jay Akosong Bar and three cases that just recently were decided. He cannot practice his Buddhist religion or his political activities. The other mistake, both the immigration judge and the BIA did, they didn't discuss it. There is material changes. Why didn't the communists give him back his land? They took away his land, which is a severe, under the BIA precedent decisions, form of persecution. They never even compensated it. His family is living in a tent till today. Thank you very much. Thank you, counsel. Does any of my colleagues have further questions? I don't. I don't either. This case will be submitted with our counsel. Were you trying to say something, counsel? Oh, no, no. One of the problems with Zoom is your green light goes on sometimes when you move. Let me thank counsel for their briefing and arguments in this case. And this case will be submitted.
judges: Hurwitz, Feinerman, Bress